**SO ORDERED.**

**SIGNED this 10 day of July, 2008.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WILMINGTON DIVISION

IN RE:

| | |
|---|---|
| EAGLE CREEK SUBDIVISION, LLC | Case No. 08-04292-8-JRL |
| EAGLES TRACE, LLC | Case No. 08-04293-8-JRL |
| AUMOND GLEN, LLC | Case No. 08-04294-8-JRL |
| BACK CREEK FARMS SUBDIVISION, LLC | Case No. 08-04295-8-JRL |
| SADDLEBROOK SUBDIVISION, LLC | Case No. 08-04296-8-JRL |

   Debtors.

_____

## ORDER

These matters came before the court on the debtors' emergency motions for an order authorizing post-petition financing arrangements pursuant to 11 U.S.C. §§ 364(c) and (d). On July 1, 2008, the court conducted a hearing on these matters in Raleigh, North Carolina.

The debtors filed for relief under Chapter 11 of the Bankruptcy Code on June 27, 2008 and currently operate as debtors-in-possession. The debtors are North Carolina limited liability companies that engage in the business of real estate development in North Carolina and South Carolina. In order to provide financing for the continued development of lots in the debtors' subdivisions, the debtors desire to continue loan agreements with various lenders (collectively "the

primary lenders")[1] that provided pre-petition financing in the form of construction draws.[2] The debtors wish to continue the relationships with the lenders on the same terms that existed prior to the petition date, with any additional advances made by the lenders to be secured by the lenders' existing collateral pursuant to Section 364(c). Each of the debtors currently has a contract with Eastwood Construction Co., Inc. ("Eastwood") to purchase lots developed by the debtors according to schedules outlined in the contracts with Eastwood. The debtors contend that they will be unable to fund continued construction and comply with the terms of the contracts with Eastwood if they do not receive continued financing from the primary lenders. The debtors assert that if they are unable to sell lots to Eastwood, they will be forced to find other purchasers for the lots, which may be upon less favorable terms and could severely lower the value of the properties.

The debtors also seek post-petition financing pursuant to 11 U.S.C. § 364(d), in addition to the continued financing in the form of construction draws from the primary lenders. According to the debtors, certain individuals have agreed to advance funds that will be pooled together to create a line of credit upon which the debtors may draw to fund operating costs (the "secondary financing"). The proposed terms for the secondary financing include a "priming" or subordination

---

[1] The lenders in each of the cases are as follows:

| Case Name | Case No. | Lender |
| --- | --- | --- |
| Eagle Creek Subdivision, LLC | 08-04292-8-JRL | Waccamaw Bank |
| Eagles Trace, LLC | 08-04293-8-JRL | Regions Bank |
| Aumond Glen, LLC | 08-04294-8-JRL | SunTrust Bank |
| Back Creek Farms Subdivision, LLC | 08-04295-8-JRL | KeyBank, N.A. |
| SaddleBrook Subdivision, LLC | 08-04296-8-JRL | SunTrust Bank |

[2] As of the date of the hearing, only Waccamaw Bank, the lender in the Eagle Creek Subdivision, LLC case, had agreed to provide the post-petition financing requested by the debtors.

of all liens junior to the liens of the primary lenders. Therefore, the proposed secondary financing debt will be secured by a second priority lien on the debtors' property. The debtors contend that this new financing is necessary to cover operating costs on an as-needed basis.

Section 364 of the Bankruptcy Code permits the court to approve post-petition financing under certain conditions. Specifically, it provides:

> (a) If the trustee is authorized to operate the business of the debtor under section 71, 1108, 1203, 1204, or 1304 of this title, unless the court orders otherwise, the trustee may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of this title as an administrative expense.
>
> (b) The court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense.
>
> (c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt–
>> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
>> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
>> (3) secured by a junior lien on property of the estate that is subject to a lien.
>
> (d) (1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if –
>> (A) the trustee is unable to obtain such credit otherwise; and
>> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate of the estate on which such senior or equal lien is proposed to be granted.
>
>   (2) In any hearing under this subsection, the trustee has the burden of proof on the issue of adequate protection.

11 U.S.C. § 364(a)-(d). Section 1107(a) of the Bankruptcy Code gives a debtor-in-possession the same rights as a trustee under § 364. Therefore, a court may authorize a Chapter 11 debtor-in-possession to enter into certain post-petition financing arrangements if the requirements of § 364 are

met.

At the hearing, Scott Stover, managing partner and chief financial officer of LandCraft Management, LLC, presented testimony regarding the debtors' financing needs and the value of the debtors' properties. LandCraft Management, LLC is the management company that has historically provided management services to each of the debtors.[3] Stover testified that, with the exception of the properties in the Aumond Glen Subdivision, the debtors' properties are incomplete and that substantial financing is required to bring the properties into compliance under the terms of the Eastwood contracts. Stover stated that he believes the properties would sell for substantially less on the open market than the prices required under the Eastwood contracts. However, Stover further testified that Eastwood has filed notices of default under the contracts for at least one of the subdivisions.[4] In addition, Stover provided extensive testimony regarding the debtors' management structure and the management fees outlined in the debtors' cash collateral budgets. Stover testified that LandCraft Management, LLC provides management services to each of the debtors in exchange for a management fee. Those management fees are paid by the debtor-LLC's and are used to pay for overhead expenses such as rent, utilities, and payroll. The management fee is pro-rated based on lot inventory per community and is approximately $500.00 per lot per year.

Based on the record, the court finds that the debtors are authorized to obtain post-petition financing in the form of construction draws from the primary lenders pursuant to Section 364(c) of the Bankruptcy Code. The debtors have demonstrated that they are unable to obtain unsecured

---

[3] LandCraft Communities, LLC has recently been formed in order to account for overhead on development LLC's that have filed for Chapter 11.

[4] The issue of the debtors' default and Eastwood's continued performance under the contracts is the subject of pending motions for private sale filed by the debtors.

credit allowable under Section 503(b)(1) as an administrative expenses, as required by the Code. Although the court is unable to compel the lenders to continue the financing arrangements, such financing is authorized to the extent that the lenders are willing to continue to provide the construction draws.  The court is convinced of the necessity for post-petition financing in this case in order to continue construction on the projects and maximize the value of the property to the estates.  Although the debtors' management structure is somewhat unconventional, the fees charged to manage the properties are fairly modest.

However, the court does not find that the debtors have met their burden of proof to justify a priming lien for secondary financing pursuant to Section 364(d).  The debtors have not shown that adequate protection is available to the second lienholders as required by Section 364(d) of the Bankruptcy Code.  The court cannot authorize a priming lien unless the debtors have shown that each lienholder whose rights would be impaired by the proposed priming lien are adequately protected.  Whether or not these impaired lienholder are adequately protected largely turns on the viability of the sales contracts with Eastwood, which is an issue to be decided at a later date.  The court is also concerned about the issue of notice to the investors that hold second liens on the properties.  The second lienholders did not attend the hearing and the court is not convinced that notice was sufficient to allow them to comprehend that the debtors propose to prime their liens. However, the court is willing to approve any necessary debtor-in-possession financing for the next fifteen days until a final hearing can be held as an administrative expense or secured by a junior lien on the properties.

Based on the foregoing, the court ALLOWS the debtors' motions for an order authorizing post-petition financing pursuant to 11 U.S.C. § 364(c)(1) and DENIES the debtors' motions for an

5

order authorizing post-petition financing pursuant to 11 U.S.C. § 364(d). The debtors are permitted to continue post-petition financing arrangements with the primary lenders in the form of construction draws, to the extent the primary lenders wish to continue the lending arrangements with the debtors. However, the debtors are not permitted to enter into the proposed secondary financing arrangement pursuant to § 364(d), as the debtors have failed to make the required showing that the interests of the lienholders that would be impaired by the priming lien are adequately protected. This issue may be revisited at a final hearing on the matter.

**"END OF DOCUMENT"**